UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MITCHELL L. WALCK,<br><br>     Plaintiff,<br><br>v.<br><br>MIROSLAVA ZAVALA; IDAHO STATE CORRECTIONAL INSTITUTION; ISCI ADMINISTRATORS; UNKNOWN OFFICERS; and OTHER IDOC STAFF,<br><br>     Defendants. | Case No. 1:26-cv-00015-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Mitchell L. Walck's Complaint because of Plaintiff's status as an inmate and in forma pauperis request. A "conditional filing" means that a plaintiff must obtain authorization from the Court to proceed. Upon screening, the Court must dismiss claims that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

Having reviewed the record, the Court concludes that the Complaint fails to state a claim upon which relief may be granted. Accordingly, the Court enters the following Order directing Plaintiff to file an amended complaint if Plaintiff intends to proceed.

1. **Standards of Law for Screening Complaints**

A complaint must contain "a short and plain statement of the claim showing that the

INITIAL REVIEW ORDER BY SCREENING JUDGE - 1

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To state an actionable claim, a plaintiff must provide "enough factual matter (taken as true) to suggest" that the defendant committed the unlawful act, meaning that sufficient facts are pled "to raise a reasonable expectation that discovery will reveal evidence of illegal [activity]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 US. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Court liberally construes the pleadings to determine whether a case should be dismissed for a failure to plead sufficient facts to support a cognizable legal theory or for the absence of a cognizable legal theory. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable factual *and* legal basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989) (discussing Federal Rule of Civil Procedure 12(b)(6)), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). Moreover, even if a complaint meets the pleading requirements, dismissal under §§ 1915 and 1915A is still appropriate if an affirmative defense, such as untimeliness, is an "obvious bar to securing relief on the face of the complaint." *Washington v. Los Angeles Cnty. Sheriff's Dep't*, 833 F.3d 1048, 1056 (9th Cir. 2016) (internal quotation marks omitted).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 2

2.    **Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction. Plaintiff alleges that, on January 3, 2023, Sergeant Miroslava Zavala refused to allow Plaintiff to mail a donation to a religious organization. *Compl.*, Dkt. 3, at 2.

The Complaint also alleges that numerous concern forms and grievances of Plaintiff's have gone "missing" and that unidentified prison staff moved Plaintiff from the infirmary to general population in "retaliation" for unidentified conduct. *Id.* at 4.

Finally, Plaintiff states that he has two "different serious medical conditions." *Id.* However, Plaintiff does not explain these conditions or challenge any specific medical treatment he has received.

Plaintiff asserts claims of religious discrimination and interference with mail against Zavala and the Idaho State Correctional Institution ("ISCI")—the prison in which he is confined. Plaintiff also attempts to name as Defendants unidentified prison administrators and officials, against whom Plaintiff appears to assert retaliation and medical treatment claims. Plaintiff seeks $3,000,000 in damages. *Id.* at 2.

3.    **Discussion**

Plaintiff has not stated a claim upon which relief may be granted. The Court will, however, grant Plaintiff 28 days to amend the Complaint. Any amended complaint should take into consideration the following.

### A.    *Standards of Law*

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. *Compl.* at 1. To state a plausible civil rights claim, a plaintiff must allege a violation of rights

INITIAL REVIEW ORDER BY SCREENING JUDGE - 3

protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). A defendant causes a constitutional deprivation within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

That is, prison officials and prison medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists … a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging a defendant (1) set in motion a series of acts by others that violated the Constitution, or knowingly refused to terminate a series of such acts, which the supervisor "knew or reasonably should have known would cause others to inflict a constitutional injury"; (2) knowingly failed to act or acted improperly "in the training, supervision, or control of his subordinates"; (3) acquiesced in the constitutional

deprivation; or (4) engaged in conduct showing "a reckless or callous indifference to the rights of others." *Id*. at 1205–09 (internal quotation marks omitted).

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

      i.          <u>Free Exercise Claim</u>

The Free Exercise Clause of the First Amendment absolutely protects the right to believe in a religion—it does not absolutely protect all conduct associated with a religion. *Cantwell v. Connecticut*, 310 U.S. 296, 303–04 (1940). Inmates retain their free exercise of religion rights in prison. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). An inmate who is an adherent of a minority religion must be afforded a "reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam). A prison need not, however, provide "identical facilities or personnel" for "every religious sect or group within a prison," and a "special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." *Id.* at 322 n.2.

To serve as a basis for a viable claim challenging a prison restriction under the Free Exercise Clause, an inmate's belief must be both "sincerely held" and "rooted in religious belief." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (internal quotation marks omitted). Further, the burden placed on the inmate's religious exercise by the defendants'

INITIAL REVIEW ORDER BY SCREENING JUDGE - 5

actions must be substantial. *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989). *De minimis*—or minor—burdens on the free exercise of religion are not of a constitutional dimension, even if the belief upon which the exercise is based is sincerely held and rooted in religious belief. *See, e.g.*, *Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999) (the unavailability of a non-pork tray for inmate at 3 meals out of 810 does not constitute more than a *de minimis* burden on inmate's free exercise of religion).

Challenges to prison restrictions that are alleged "to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Jones v. N.C. Prisoners' Union*, 433 U.S. 119, 125 (1977) (quotation omitted). What constitutes a reasonable opportunity for religious exercise, therefore, must be evaluated within the context of a prison's need for security, among other legitimate goals. *O'Lone*, 482 U.S. at 350–53 (1987) (holding that a prison's policy of not allowing Muslim inmates on work detail to return to the prison to attend Jumu'ah, a group worship service, did not violate the Constitution).

So long as a restriction on an inmate's religious practice "is reasonably related to legitimate penological interests," that restriction is valid. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Factors to be considered in this reasonableness inquiry include (1) whether there is a logical connection between the governmental interest and the particular policy or decision at issue; (2) whether "alternative means of exercising the right remain open to prison inmates"; (3) the impact that accommodating a prisoner's religious practice would have on "other inmates, on prison personnel, and on allocation of prison resources generally"; and

INITIAL REVIEW ORDER BY SCREENING JUDGE - 6

(4) whether there is an absence of "obvious, easy alternatives" to the policy or decision. *O'Lone*, 482 U.S. at 350–53 (internal quotation marks and alterations omitted). Courts must take care to avoid "substitut[ing] [their] judgment on difficult and sensitive matters of institutional administration." *Id*. at 353 (internal quotation marks and alteration omitted).

A jail or prison's occasional failure to accommodate a religious practice does not violate the Free Exercise Clause where the failures were not caused by "anything other than institutional shortage." *Wintrode v. Ada Cnty. Jail Emps.*, No. 1:24-CV-00015-DCN, 2025 WL 2374328, at *3 (D. Idaho Aug. 13, 2025) (unpublished). Similarly, a temporary delay in accommodating religious practice does not violate the First Amendment when caused by ordinary administrative or institutional delay. *See Tapp v. Stanley*, 2008 WL 4934592, at *7 (W.D.N.Y. Nov. 17, 2008) (unpublished) (holding that a 3-month delay in providing a prisoner with a religious meal did not substantially burden the prisoner's sincerely held religious beliefs where the problem was "caused by ordinary administrative delay").

An isolated act of negligence does not violate an inmate's First Amendment right to free exercise of religion. *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009).

      ii.        Interference-with-Mail Claims

Inmates enjoy a First Amendment right to send and receive mail. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Under *Turner*, however, a prison may adopt regulations or practices that impinge on the right to send and receive mail if those regulations are "reasonably related to legitimate penological interests." 482 U.S. at 89.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 7

iii.      Retaliation Claims

The First Amendment also includes the right to be free from retaliation for exercising constitutional rights. An inmate asserting a retaliation claim must show the following: (1) "a state actor took some adverse action" against the inmate; (2) the defendant took the adverse action "because of" the inmate's exercise of protected conduct; (3) the action "chilled the inmate's exercise" of protected conduct; and (4) the action "did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

"[B]are allegations" of a retaliatory motive are insufficient to support a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) ("We have repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient."). Rather, when analyzing a prison official's proffered reasons for allegedly retaliatory conduct, the Court must "afford appropriate deference and flexibility" to that official. *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (internal quotation marks omitted).

Not every retaliatory act taken by an official can be considered an adverse action that chills the exercise of protected speech. The proper inquiry asks whether the official's action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envt'l Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks omitted). If it would not, then "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). *See also Morris v. Powell*,

449 F.3d 682, 686 (5th Cir. 2006) ("The [*de minimis*] standard achieves the proper balance between the need to recognize valid retaliation claims and the danger of federal courts embroiling themselves in every disciplinary act that occurs in state penal institutions.") (internal quotation marks and alteration omitted).

A plaintiff asserting a retaliation claim under § 1983 also "must show a causal connection between a defendant's retaliatory animus and [the plaintiff's] subsequent injury." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (*Bivens* action). Retaliatory motivation is not established simply by showing an adverse action by the defendant *after* protected speech. Instead, the plaintiff must show a nexus between the two. *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000). Therefore, although the timing of an official's action can constitute circumstantial evidence of retaliation—if, for example, an adverse action was taken shortly after the official learned about an inmate's exercise of protected conduct—there generally must be something more than mere timing to support an inference of retaliatory intent. *Pratt*, 65 F.3d at 808.

The causal nexus requirement of a retaliation claim is a "but-for" causation test. If the adverse action would have been taken even without the inmate's exercise of protected conduct, the plaintiff cannot satisfy the causation element of the retaliation claim. *Hartman*, 547 U.S. at 260.

Even if an inmate proves that his protected conduct was the but-for cause of an adverse action by a prison official, the inmate's retaliation claim fails so long as that action also reasonably advanced a legitimate penological interest. The state unquestionably has a legitimate interest in maintaining institutional order, safety, and security in its prisons,

INITIAL REVIEW ORDER BY SCREENING JUDGE - 9

*Rizzo*, 778 F.2d at 532, and the "plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains," *Pratt*, 65 F.3d at 806.

        iv.        <u>Medical Treatment Claims</u>

The Eighth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, protects prisoners against cruel and unusual punishment and guarantees prisoners the right to minimally adequate conditions of confinement. To state a claim under the Eighth Amendment, a prisoner must plausibly allege that he is "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc).

The Eighth Amendment includes the right to adequate medical treatment in prison. Prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*,

503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an

Eighth Amendment violation only if those needs are 'serious.'" *Id*. The Ninth Circuit has

defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in
> further significant injury or the unnecessary and wanton
> infliction of pain[;] ... [t]he existence of an injury that a
> reasonable doctor or patient would find important and worthy
> of comment or treatment; the presence of a medical condition
> that significantly affects an individual's daily activities; or the
> existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir. 1992) (internal citations omitted),

*overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)

(en banc).

As to the subjective standard, "deliberate indifference entails something more than

mere negligence, … [but] is satisfied by something less than acts or omissions for the very

purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at

835. A prison official or prison medical provider acts with deliberate indifference "only if

the [prison official or provider] knows of and disregards an excessive risk to inmate health

and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal

quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*,

833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official must not

only 'be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*,

391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

In the medical context, deliberate indifference can be "manifested by prison doctors

in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted). That is, a delay in medical treatment can violate an inmate's right to adequate prison medical care. However, an inmate asserting an Eighth Amendment violation must establish that the delay caused further harm. *McGuckin*, 974 F.2d at 1060.

Medical malpractice or negligence does not support an Eighth Amendment claim. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam). Additionally, there is no constitutional right to an outside medical provider of one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care additional and supplemental to the medical care provided by the prison staff within the institution.").

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. Moreover, even prison officials or medical providers who *did* know of a substantial risk to an inmate's health will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

"There is not one proper way to practice medicine in a prison, but rather a range of

INITIAL REVIEW ORDER BY SCREENING JUDGE - 12

acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (internal quotation marks omitted). Accordingly, mere differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

"[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Stated another way, a plaintiff must prove that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [the plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015). To violate the Eighth Amendment, the choice of treatment must have been "so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998); *see also Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018) ("[P]rison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants.").

Non-medical prison personnel generally are entitled to rely on the opinions of

INITIAL REVIEW ORDER BY SCREENING JUDGE - 13

medical professionals with respect to the medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. *Snow*, 681 F.3d at 986 (internal quotation marks omitted); *see also McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner") (internal quotation marks omitted).

### B.      *Plaintiff's Claim Against Zavala Appears Untimely*

Plaintiff's only allegation against Defendant Zavala is that, on January 3, 2023, Zavala refused to allow Plaintiff to mail a donation to a religious organization. However, this claim appears time-barred and, therefore, legally frivolous. *See Julian v. Crystal Springs Rehab. Ctr.*, 884 F.2d 1395, n.3 (9th Cir. 1989) (unpublished) ("We agree with the district court that an untimely complaint is frivolous and justifies *sua sponte* dismissal because a complete defense is obvious from the pleadings and the deficiency cannot be cured by amendment.") (citing *Stanger v. city of Santa Cruz,* 653 F.2d 1257, 1257–58 (9th Cir. 1986)).

In Idaho, the statute of limitations period for a § 1983 claim is two years. *See* Idaho Code § 5-219; *Wilson v. Garcia*, 471 U.S. 261, 279–80 (1985) (holding that the statute of limitations period for § 1983 claims is the statute of limitation period for personal injuries in the state where the claim arose), *abrogated on other grounds by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). Though state law governs the limitations period for filing

INITIAL REVIEW ORDER BY SCREENING JUDGE - 14

a § 1983 claim, federal law governs when that claim accrues, or arises. *Elliott v. City of Union City*, 25 F.3d 800, 801–02 (9th Cir. 1994). Under the "discovery rule," a claim accrues "when the plaintiff knows or has reason to know of the injury" that is the basis of the claim. *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (internal quotation marks omitted). That is, the statute of limitations begins to run when the plaintiff becomes aware of the actual injury—not "when the plaintiff suspects a legal wrong." *Id*.

If a plaintiff cannot show that a claim accrued during the statute of limitations period, he still may file a lawsuit after the deadline if he can show that the statute should be tolled (or paused) for a certain period of time during the period within which he should have filed the lawsuit. Pursuant to the Prison Litigation Reform Act ("PLRA"), the "statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process." *Brown v. Valoff,* 422 F.3d 926, 943 (9th Cir. 2005).

In addition to tolling under the PLRA, state tolling law applies to § 1983 actions unless important federal policy will be undermined. *See Johnson v. Railway Express Agency, Inc*., 421 U.S. 454, 464-65 (1975). Idaho law allows for statutory tolling of the statute of limitations for a person's juvenile status or insanity. Idaho Code § 5-230. However, because the Idaho Supreme Court has determined that "[s]tatutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute," equitable tolling is not available in Idaho. *Wilhelm v. Frampton*, 158 P.3d 310, 312 (Idaho 2007).

The doctrine of equitable estoppel, however, *is* available in Idaho. While it "does

not 'extend' a statute of limitation," equitable estoppel works in a similar manner to prevent a party who has falsely represented or concealed a material fact with actual or constructive knowledge of the truth "from pleading and utilizing the statute of limitations as a bar, although the time limit of the statute may have already run." *J.R. Simplot Co. v. Chemetics International, Inc.*, 887 P.2d 1039, 1042 (Idaho 1994), *abrogated in part on other grounds by Day as Tr. of Tr. B of Donald M. Day & Marjorie D. Day Fam. Tr. v. Transportation Dep't*, 166 Idaho 293, 301, 458 P.3d 162, 170 (Idaho 2020).

Equitable estoppel requires a showing of four elements: "(1) a false representation or concealment of a material fact with actual or constructive knowledge of the truth; (2) that the party asserting estoppel did not know or could not discover the truth; (3) that the false representation or concealment was made with the intent that it be relied upon; and (4) that the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice." *Id*.

Plaintiff filed the Complaint in this case, at the earliest, on January 6, 2026.[1] Considering that the prison administrative grievance process generally takes 30 days to exhaust, it would appear that any claims arising before December 7, 2023—two years and 30 days before the filing of the Complaint—are time-barred. This includes Plaintiff's claim against Zavala, which arose on January 3, 2023. If Plaintiff includes Zavala as a Defendant in an amended complaint, he must explain why he believes this claim is not subject to

---

[1] **Error! Main Document Only.**Prisoners are usually entitled to the benefit of the "mailbox rule," which provides that a legal document is deemed filed on the date the prisoner delivers it to the prison authorities for filing by mail, rather than the date it is actually filed with the clerk of court. *See Houston v. Lack*, 487 U.S. 266, 270–71 (1988); *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009) (applying the mailbox rule to civil rights actions).

INITIAL REVIEW ORDER BY SCREENING JUDGE - 16

dismissal as untimely.

### C.    The Complaint Fails to State a Plausible Claim Against ISCI

ISCI, as a state entity, is not a "person" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Further, even if ISCI were a "person" for purposes of § 1983, it would be immune from suit in federal court under the Eleventh Amendment. *Hans v. Louisiana*, 134 U.S. 1, 16–18 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Quern v. Jordan*, 440 U.S. 332, 342–44 (1979) (holding that § 1983 does not waive state sovereign immunity); *Esquibel v. Idaho*, No. 1:11-cv-00606-BLW, 2012 WL 1410105, at *6 (D. Idaho Apr. 23, 2012) (holding that Idaho itself has not waived state sovereign immunity for constitutional claims).

For these reasons, the Complaint fails to state a claim for relief against ISCI, and Plaintiff should omit ISCI from any amended complaint.

### D.    The Complaint Fails to State a Plausible Claim Against the Unidentified Defendants

The Complaint does not contain sufficient allegations to support a reasonable inference that any unidentified Defendant violated Plaintiff's constitutional rights.

With respect to Plaintiff's retaliation claim, the Complaint fails to identify the protected conduct in which he engaged. Nor does Plaintiff plausibly allege that any Defendant acted with a retaliatory motive. Plaintiff's bare accusation of retaliation is not enough. *See Rizzo*, 778 F.2d at 532 n.4. Also, rather than retaliation, the "obvious alternative explanation" for Plaintiff's move to general population, *Iqbal*, 556 U.S. at 682 (internal quotation marks omitted), is that prison medical providers decided Plaintiff's

INITIAL REVIEW ORDER BY SCREENING JUDGE - 17

medical condition no longer required him to be housed in the infirmary.

Plaintiff's medical treatment claims are also implausible. The Complaint contains no allegations about Plaintiff's medical conditions, the treatment he received for those conditions, or the medical providers who provided treatment. Plaintiff states only that he suffers from medical problems and implies that his medical treatment was inadequate. This is woefully insufficient to satisfy either the objective or subjective prong of an Eighth Amendment analysis.

### 4. Standards for Amended Complaint

If Plaintiff chooses to amend the Complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehrler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal quotation marks and alteration omitted).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as

INITIAL REVIEW ORDER BY SCREENING JUDGE - 18

state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular constitutional or statutory provision Plaintiff alleges has been violated; (6) facts alleging the elements of the violation are met; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant.

Further, any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896, (9th Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate, numbered paragraph. The amended complaint must be legibly written or typed in its entirety, and it should be clearly designated as the "Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files an amended complaint, Plaintiff must also file a "Motion to Review the Amended Complaint." If Plaintiff does not amend within 28 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further notice. *See Knapp*

INITIAL REVIEW ORDER BY SCREENING JUDGE - 19

*v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1.      The Complaint fails to state a claim upon which relief may be granted. Plaintiff has 28 days within which to file an amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the amended complaint) a Motion to Review the Amended Complaint.

2.      If Plaintiff does not file a timely amended complaint, this case may be dismissed with prejudice and without further notice.

3.      Because an amended complaint is required for Plaintiff to proceed, Plaintiff's request for appointment of counsel (contained in the Complaint) is DENIED without prejudice. Plaintiff may renew the request for counsel in an amended complaint.

DATED: July 6, 2026

_____
David C. Nye
U.S. District Court Judge

INITIAL REVIEW ORDER BY SCREENING JUDGE - 20